THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARON NEWTON, individually and on behalf of all others similarly situated, ) ) ) ) Plaintiff, ) ) v. ) ) CLEARWIRE, INC., ) ) Defendant. ) | Case No. **COMPLAINT – CLASS ACTION** JURY TRIAL DEMANDED |

Plaintiff Sharon Newton ("Plaintiff"), by and through her attorneys, alleges on personal knowledge as to all facts related to themselves and on information and belief as to all other matters, which are based upon, among other things, the investigation made by Plaintiff through her counsel, as follows:

## NATURE OF THE ACTION

1. Defendant Clearwire Corporation sells wireless Internet access service known as CLEAR Internet to consumers in the United States, including throughout the state of California. Clearwire represents, on its website and in marketing materials, that its high-speed Internet service provides a "fast," "always on, always secure" connection.

2. Defendant represents that its data speeds are comparable to DSL and Cable Internet service. Specifically, Defendant represents that it provides "average speeds of 3 to 6 Mbps and burst of over 10 Mbps."

3. Defendant further represents that its service "gives you the speed you need to stream movies, play online games, video chat on the go and take full advantage of the power of the Internet from wherever you are."

4. Defendant further represents that there is no pre-set cap on data speeds.

5. However, the Internet service provided by Clearwire is not the "always on," "high-speed" connection Defendant represents.

6. Defendant intentionally slows the connection speed of its users because of its network's inability to properly service the volume of data traffic. This practice commonly known as "throttling."

7. Defendant's practice of throttling customers' data speed is directly contrary to Defendant's representations to its customers that its service as no pre-set speed limit.

8. Because of Defendant's practice of throttling connection speeds users, including Plaintiff and members of the class, are unable to attain the data speeds represented by Defendant and are unable to use the CLEAR service for streaming movies, playing online games, or video conferencing — all applications that Defendant specifically represents are possible on CLEAR.

9. Plaintiff and members of the Class, relying on Defendant's representations of its Internet service capabilities have paid for CLEAR and have not received the promised performance. Accordingly, Defendant's advertisements are false and misleading and Defendant has breached its contracts with Plaintiff and members of the class.

## JURISDICTION AND VENUE

10. This action is within the original jurisdiction of this Court by virtue of 28 U.S.C. § 1332(d)(2). Plaintiff is a citizen of a different state than the Defendant, and the amount in

controversy of this class action exceeds five million dollars ($5,000,000.00), exclusive of interest and costs.

11.    Venue for this cause is properly laid in the Eastern District of California, pursuant to and in accordance with 28 U.S.C. § 1391.

## THE PARTIES

12.    Plaintiff Sharon Newton is a citizen of California residing in Turlock, Stanislaus County, California.

13.    Plaintiff signed up for a CLEAR Internet plan from Clearwire in 2009.  Plaintiff pays $55 per month for a plan that Defendant represented to include unlimited 4G data usage, no preset download speed cap, and 1.0 Mbps upload speeds.

14.    Plaintiff purchased the service because of Defendant's representations and advertisements that the CLEAR service is faster than dial-up and would allow her to watch movies and use video conferencing.

15.    Unfortunately, because of Defendant's practice of throttling data traffic, Plaintiff has never been able to use the CLEAR Internet service for voice calling, has never been able to watch online video without interruption.

16.    By way of example, Plaintiff attempted to view a movie though Netflix's online viewing service and it took five hours to download.  Typically on a DSL or Cable Internet connection viewing would have been possible almost instantly.

17.    Contrary to Defendant's representations about CLEAR Internet's speeds, the fastest download speeds Plaintiff has ever encountered are 300-400 Kbps (0.3-0.4 Mbps) and are usually substantially below that.

18.     Plaintiff contacted Clearwire in an attempt to resolve the speed issues with the service and a Clearwire customer service agent informed her that the data would always be throttled when she tried to watch video because the network cannot handle the traffic.

19.     Defendant Clearwire is a corporation organized under the laws of the state of Delaware, with its headquarters at 4400 Carillon Point, Kirkland, Washington 98033.  According to a November 4, 2010 press release from Defendant, as of that date it had 2.84 million total subscribers and it represented its network's ability to reach 100 million people.

## SUBSTANTIVE ALLEGATIONS

20.     Clearwire provides a wireless 4G Internet service known as CLEAR.

21.     In its written advertisements, CLEAR represented to Plaintiff and the putative class that its service is "fast-as-you-want Internet at home."  *See* http://www.clear.com/discover (last visited February 2, 2011).

22.     Clearwire states that "[w]ith average speeds are "3 to 6 Mbps and burst of over 10 Mbps, CLEAR's 4g WiMAX network gives you the speed you need to stream movies, play online video games, video chat on the go and take full advantage of the power of the Internet from wherever you are."  *See* http://www.clear.com/discover (last visited February 2, 2011).

23.     Clearwire offers various service plans, all but two of which claim to have no preset speed cap.  *See* http://www.clear.com/plans (last visited February 2, 2011).  Clearwire expressly represents to Plaintiff and the putative class that there is "no preset speed cap."

24.     The advertisements mentioned above are substantially similar to the advertisements reviewed by Plaintiff prior to her purchasing Defendant's 4G Internet service.

They are also substantially similar to the verbal representations made to Plaintiff by Defendant's agents during telephone calls.

25. Even those two plans with a preset speed cap claim to be capable of 1.5 Mbps, which comparable to a T-1 line used by most businesses.

26. Plaintiff, who has a supposedly uncapped and unlimited plan, has never been able to reach the data speeds of even the capped plans. The capped plans have a lower monthly fee than the unlimited plan purchased by Plaintiff.

27. Clearwire's plans are priced comparably to the DSL and Cable Internet services that it claims are its equal in performance: $35 to $95 per month. Clearwire charges more for plans with no limits compared to limited plans.

28. Despite all of these representations regarding fast speed, no speed cap, and unlimited data, Clearwire does cap its data speeds well below 1.5 Mbps. Thus the representations of "no speed cap" and "unlimited data" are false and misleading.

29. Even though Clearwire intentionally slows speeds for unlimited plan subscribers to speeds slower than its lower priced plans, Clearwire does not reduce its monthly service fee for unlimited users.

30. Users, such as Plaintiff, who attempt to view online video or other data intensive applications find their connections throttled to reduce load on Defendant's wholly inadequate network, thereby preventing Plaintiffs from viewing the video in a satisfactory manner.

31. Plaintiff telephoned Defendant several times over the past two years. During at least of the calls, approximately 6–8 months ago, Plaintiff was specifically informed by customer service representative at CLEAR that whenever she attempts to view online video, an application

expressly promoted in CLEAR's advertising materials, her data service will be throttled. The result is a data speed cap, which is directly contrary to Defendant's representations that none exists.

32.     Upon information and belief, Clearwire lacks sufficient infrastructure to accommodate the data generated by its customers.  In order to prevent the network from failing, Clearwire reduces the amount of data that any one user can transmit.  This creates an undisclosed cap on each user's data.  This cap is not known to the user and exists though Defendant's specifically warranted that Plaintiff and class members would have no data cap.

33.     The result is slowed Internet traffic for all users, rendering CLEAR useless for data heavy applications and trying for even simple web browsing.

34.     Thus, unbeknownst to Plaintiff and members of the class, Clearwire *does* cap its Internet users at speeds significantly below 1.5 Mbps  Accordingly, none of Clearwire's plans are "fast [] alternative[s] to DSL or Cable," The usage not "unlimited"; it is limited, intentionally, by Clearwire. This practice renders Clearwire's services a bad choice for any application, and especially bad for "gaming, streaming videos, downloading large files," or anything else requiring high-speed access – all applications that CLEAR is expressly represented to perform.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

35.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23 behalf of a Class consisting of: all persons in the United States who purchased Clearwire Internet access from February 1, 2005 until to the present (the "Class Period"). Excluded from the Class are the defendant herein, any entity that has a controlling interest in

defendant, and defendant's current or former directors, officers, counsel, and their immediate family.

    36. The requirements of Rule 23 are satisfied because:

        a. Numerosity: The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of class members is presently unknown to Plaintiff, according to Defendant's representations in press releases and SEC filings, Clearwire currently has over 2.84 million subscribers to its Internet service. In addition, the names and addresses of the Class members can be ascertained from the books and records of Clearwire. Notice can be provided to Class members by a combination of published notice and first-class mail using techniques and a form of notice similar to those customarily used in class actions.

        b. Commonality: There is a well-defined community of interest in the questions of law and fact involved in this case. The questions of law and fact which predominate over questions which may affect individual Class members include the following:

            1) Whether the Service was misrepresented when sold to the Plaintiff and the Class;

            2) Whether Clearwire's false and/or misleading statements of fact, and its concealment of material facts, to the Class and the public about the quality of its service were likely to deceive the public;

  3) Whether, by its misconduct as set forth herein, Clearwire has engaged in unfair, deceptive, untrue, or misleading statements about the quality of its service;

  4) Whether defendant violated California Business & Professions Code § 17200, et seq;

  5) Whether defendant violated California Business & Professions Code § 17500, et seq;

  6) Whether defendant violated California Civil Code § 1750, et seq;

  7) Whether, as a result of Clearwire's misconduct, Plaintiff and the Class are entitled to damages, restitution, injunctive, equitable and other relief, and the amount and nature of such relief.

  8) Whether Clearwire earned substantial profits by continuing to market a service that it knew to be defective; and

  9) Whether Clearwire should be ordered to disgorge, for the benefit of the Class, all or part of its ill-gotten profits from the sale of the defective service and/or make full restitution to Plaintiff and the other members of the Class.

c. Typicality: Plaintiff's claims are typical of the claims of the Class because Plaintiff has suffered from the same harm as the Class, i.e., paying for Internet service that was represented as high quality, reliable, and fast, and receiving less valuable service where data speeds were frequently reduced by Clearwire.  Moreover, Clearwire made the same false and misleading

representations and omissions to the Plaintiff and the Class. Plaintiff does not have any interests antagonistic to, or in conflict with, the Class. Plaintiff's claims are typical of the claims of the other members of the Class because Plaintiff and all of the Class members' damages arise from and were caused by the defective Internet service purchased by Plaintiff and the Class.

d. Adequacy: Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff has retained competent counsel experienced in class action litigation and intends to prosecute this action vigorously.

e. Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the class members to seek redress for the wrongful conduct alleged.

37. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

## FIRST CAUSE OF ACTION

### Unfair Business Practices in Violation of California Business & Professions Code § §17200

38. Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein. Beginning on a date unknown to Plaintiff and continuing to the present, Clearwire has

engaged in, is engaged in, and proposes to engage in unfair competition, as that term is defined in Business & Professions Code § 17200.

39. As used in this Complaint and in § 17200, "unfair competition" means (1) an unlawful, unfair or fraudulent business act or practice; (2) unfair, deceptive, untrue or misleading advertising; and/or (3) an act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code.  This conduct is actionable pursuant to Business & Professions Code §§ 17200 and 17203.

40. In engaging in conduct which constitutes unfair competition, Clearwire has acquired money or property from members of the general public.  It is impossible for the Plaintiff to determine the exact amount of money that Clearwire has obtained without a detailed review of its books and records.

41. Specifically, Clearwire has engaged in, is engaged in, and proposes to engage in the following unlawful, unfair, and fraudulent business acts and practices, each of which independently constitutes Unfair Competition.

42. The conduct described above is unfair because the harm to Plaintiff and the General Public from this practice outweighed any benefits, and threatens an incipient violation of California's consumer protection laws.

43. The conduct described above is unlawful pursuant to California Civil Code Section 1770(a)(5) and (7).  For that reason, it is also an unlawful business act and/or practice pursuant to Business and Professions code section 17200 *et seq*.

44. Members of the public were and are likely to be misled by Defendant's conduct. For that reason, Defendant's conduct constitutes a fraudulent business act and/or practice

pursuant to Business and Professions Code § 17200 et seq.

45. The California Business & Professions Code § 17200 prohibits acts of unfair competition, which includes any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

46. The misrepresentations made by Clearwire of the material facts concerning the speed of its Internet service constitutes an unlawful, fraudulent or unfair business practice within the meaning of the Business & Professions Code § 17200. Al all relevant times, Clearwire knew, or should have known, that its Internet service would not perform as represented and failed to disclose this material defect to Plaintiffs and other members of the Class. Such conduct violates state law and has a tendency to deceive both the Class and the general public.

47. An unfair competition law civil action may also be predicated on unfair, deceptive, untrue or misleading advertising and any act prohibited by Cal. Bus. & Prof. Code § 17500-17581.

48. Clearwire's advertisements of the speed of its Service constitute untrue and misleading advertising prohibited by Cal. Bus. & Prof. Code § 17500-17581.

49. As a result of Clearwire's conduct as described above, Defendant has been, and will continue to be, unjustly enriched at the expense of Plaintiff and the other members of the Class. Specifically, Clearwire has been unjustly enriched by the receipt of monies and profits from the sale of its deceptive service to thousands of consumers throughout the United States.

50. Pursuant to California Business & Professions Code § 17203, Plaintiff requests an order from this Court requiring Clearwire to disgorge all ill-gotten profits and awarding Plaintiff and the other members of the Class full restitution of all monies wrongfully acquired by

Clearwire by its unfair business practices, plus interest and attorney's fees pursuant to the California Code of Civil Procedure § 1021.5.

## SECOND CAUSE OF ACTION

### Breach of Contract

51. Plaintiff incorporates and realleges the above paragraphs as if set forth fully herein.

52. Plaintiff and Class members, for their consideration, promised to make monthly payments for high-speed Internet service as represented by Defendant. Clearwire, for its consideration, promised to deliver such high-speed Internet service.

53. Plaintiff and the Class members performed their obligations under the contract by pay their monthly fees.

54. Clearwire unjustifiably breached the contract by intentionally failing to deliver the promised high-speed Internet service. Accordingly, Plaintiff and the class are entitled to damages subject to proof at trial.

## THIRD CAUSE OF ACTION

### Unjust Enrichment

55. Plaintiff incorporates and realleges the above paragraphs as if set forth fully herein.

56. Clearwire's conduct unjustly enriched Clearwire, to the detriment of the Class, by causing Clearwire to receive payments for high-speed Internet service that it did not provide.

57. Plaintiff and members of the Class have been injured in that they paid for a high-speed Internet service that they did not receive.

58. Clearwire's retention of funds paid by Plaintiff and Class members violates the fundamental principle of justice, equity, and good conscience.

59. Clearwire should be ordered to return any funds obtained as a result of its deceptive scheme to the Class.

## FOURTH CAUSE OF ACTION

**(Declaratory and Injunctive Relief Pursuant To 28 U.S.C. § 2201)**

60. Plaintiff incorporates by reference the allegations contained in the paragraphs above, as if set forth fully herein.

61. There is an actual controversy between Defendant and the Class concerning Defendant's policy of throttling customers' download bandwidth and its advertisements that there is no preset download speed.

62. This Court may "declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201.

63. Plaintiff and the Class are concerned parties who seek a declaration of their rights and legal relations with Defendant with regard to Defendant's advertisements and policy of limiting download speeds.

64. Plaintiff and members of the proposed Class have been damaged because they paid a premium for unlimited download speed without a speed limit but Defendant did not live up to its promises.

65. Plaintiff on behalf of herself and putative Class members, seeks a Court declaration of the following:

   a. Defendant's policy of limiting download speeds contrary to its promises have been, and continue to be, deceptive, unfair, and in violation of state and federal laws intended to protect consumers from such conduct;

   b. Defendant is in material breach of governing Service Agreements in a manner that results in the unjust enrichment of Defendant;

   c. Defendant knew that its policy of throttling download speeds affected its customers' ability to make full use of their Internet connection, and knew that such policy was not made pursuant to any Service Agreement; and

   d. Defendant shall discontinue throttling download speeds, or it shall discontinue marketing its service as having no preset speed cap.

## FIFTH CAUSE OF ACTION

### Violation of California Civil Code § 1750 et seq. (Consumers' Legal Remedies Act)

66. Plaintiffs incorporate by reference the allegations contained in the paragraphs above, as if set forth fully herein.

67. California has enacted the California Consumers' Legal Remedies Act, Civ. Code § 1750 *et seq.*, to protect consumers against unfair business practices; unfair competition; and false advertising. The Plaintiff named in this Complaint, and each member of the putative class, subscribed to Clearwire's Internet service primarily for personal, family, or household purposes.

68. In connection with the sale of the Internet to Plaintiff, Defendant has violated Civil Code section 1770(a)(5) by representing that their Service has characteristics, uses, or benefits, which it does not have; and violated Civil Code section 1770(a)(7) by representing that their Service is of particular standard, quality, or grade.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of herself and all others similarly situated, prays for judgment as requested above against Clearwire and further prays for:

(a) An order certifying the Class proposed herein and appointing Plaintiff and her counsel to represent the Class;

(b) For restitution and/or disgorgement of amounts paid by Plaintiff and members of the Class for the purchase of the defective Clearwire Internet service, together with interest from the date of payment;

(c) For actual damages;

(d) For statutory prejudgment interest;

(e) For reasonable attorneys' fees and the costs of this action;

(f) For legal and equitable relief under the causes of action stated herein;

(g) Plaintiff demands a trial by jury on all issues so triable; and

(h) For such other relief at this Court may deem just and proper.

DATED: March 22, 2011              By: _____
                                   Michael McShane
                                   Jonas P. Mann
                                   Audet & Partners, LLP
                                   221 Main Street
                                   Suite 1460
                                   San Francisco, CA 94105
                                   Telephone: (415) 568-2555
                                   Facsimile: (415 568-2556

                                   Clayton Halunen
                                   Shawn Wanta
                                   Halunen & Associates
                                   1650 IDS Center

15

Clayton Halunen
Shawn Wanta
Halunen & Associates
1650 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
Telephone:  (612) 605-4098
Facsimile:   (612) 605-4099